Argued and submitted January 26, 2016, reversed and remanded
February 15, 2017

ROBERT HADEN KING,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A156864

389 P3d 1171

Marc D. Brown, Deputy Public Defender, argued the cause for petitioner. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## LAGESEN, J.

Petitioner seeks review of a final order of the Board of Parole and Post-Prison Supervision following a murder review hearing. ORS 144.335(1). In that order, the board found that petitioner had not persuaded it that he is likely to be rehabilitated within a reasonable period of time and, for that reason, declined to convert petitioner's life sentence without the possibility of parole for aggravated murder to life with the possibility of parole. On review, petitioner contests a number of the subsidiary factual findings on which the board relied to determine that he had not demonstrated that he is capable of rehabilitation within a reasonable period of time, contending that those factual findings are not supported by substantial evidence in the record and that the order is not supported by substantial reason. *See* ORS 144.335 (providing that ORS 183.482(8) governs review of board orders); ORS 183.482(8)(c) (providing for substantial evidence review). Because we agree with petitioner that substantial evidence does not support three of the factual findings on which the board relied in reaching its ultimate determination, we reverse and remand to the board for reconsideration on that basis, ORS 183.482(8)(c), and do not reach petitioner's substantial reason argument.

Petitioner is serving a life sentence under ORS 163.105 (1979)[1] for the 1980 aggravated murder of a 32-year-old woman. In 2012, the board held a murder review hearing to determine whether petitioner was likely to be rehabilitated within a reasonable period of time. *See* ORS 163.105(2). Had the board made that finding, it would have been permitted to convert the terms of petitioner's imprisonment from life to life with the possibility of parole or work release. ORS 163.105(3). However, the board found that it was not persuaded by petitioner's evidence that he was likely to be rehabilitated within a reasonable period of time and, consequently, did not convert the terms of petitioner's imprisonment to life with the possibility of parole or work release.

---

[1] All references to ORS 163.105 are to the 1979 version of the statute in effect at the time of petitioner's crime.

In reaching that conclusion, the board considered various factors listed in its administrative rule governing murder review hearings, OAR 255-032-0020, and made factual findings in connection with the factors it deemed applicable. The rule provides:

"The sole issue of the hearing described in OAR 255-032-0015 shall be to determine whether or not the inmate is likely to be rehabilitated within a reasonable period of time. Criteria indicating whether the inmate is likely to be rehabilitated prior to release include:

"(1)   The inmate's involvement in correctional treatment, medical care, educational, vocational or other training in the institution which will substantially enhance his/her capacity to lead a law-abiding life when released;

"(2)   The inmate's institutional employment history;

"(3)   The inmate's institutional disciplinary conduct;

"(4)   The inmate's maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law;

"(5)   The inmate's past use of narcotics or other dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(6)   The inmate's prior criminal history, including the nature and circumstances of previous offenses;

"(7)   The inmate's conduct during any previous period of probation or parole;

"(8)   The inmate does/does not have a mental or emotional disturbance, deficiency, condition or disorder predisposing them to the commission of a crime to a degree rendering them a danger to the health and safety of the community;

"(9)   The adequacy of the inmate's parole plan including community support from family, friends, treatment providers, and others in the community; type of residence, neighborhood or community in which the inmate plans to live;

"(10) There is a reasonable probability that the inmate will remain in the community without violating the law,

and there is substantial likelihood that the inmate will conform to the conditions of parole."

OAR 255-032-0020.

In addressing the second factor, petitioner's "institutional employment history," the board found that petitioner "has not worked while incarcerated." In addressing the fourth factor, petitioner's "maturity, stability, demonstrated responsibility, and any apparent development in the inmate personality which may promote or hinder conformity to law," the board found that petitioner had not repaid the state for his trial expenses and had not reimbursed the state for the costs of his incarceration. From those facts, the board inferred that petitioner "lacks a sense of personal responsibility and recognition of his indebtedness to his fellow citizens and Oregon taxpayers; he appears to believe that he is entitled to live off the labors of others." Also addressing the fourth factor, the board found that petitioner had served the state while incarcerated by assisting law enforcement and by aiding a downed corrections officer. However, the board inferred from that conduct—and from petitioner's focus on that conduct at the hearing—that petitioner "is still involved in an adventure-seeking, risk-taking lifestyle," as he had been when he murdered his victim.

On review, petitioner challenges those findings—and others—as unsupported by substantial evidence in the record. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding of fact." ORS 183.482(8)(c). Although we reject the bulk of petitioner's challenges to the board's findings, we conclude that his challenges to the three findings identified above have merit.

*First*: the finding that petitioner "has not worked while incarcerated." The only evidence on that point affirmatively contradicts the board's finding. The record of petitioner's institutional employment history reflects that petitioner has worked while incarcerated. Although his employment was infrequent—possibly because petitioner appears to have been housed in administrative segregation for a large portion of his incarceration—the record does not

permit the factual finding that petitioner has not worked at all during his incarceration.

*Second*: the finding that petitioner "lacks a sense of personal responsibility and recognition of his indebtedness to his fellow citizens and Oregon taxpayers; he appears to believe that he is entitled to live off the labors of others." In so finding, the board relied on the facts that petitioner has financial resources available to him but has not repaid either the cost of his defense or the cost of his incarceration. However, as petitioner points out, the record reflects that the judgment of conviction did not impose upon him the monetary obligation to repay his defense costs, but instead recommended that the board order petitioner to pay his defense costs upon his release. Petitioner's uncontroverted testimony at the hearing was that his lawyers told him, consistent with the terms of the judgment, that the board would decide his liability for defense costs at the time of the release. That evidence suggests that someone in petitioner's position would think that his financial obligations to the state were something that would be worked out at a later date when, if ever, he obtained release.

Beyond that, the record lacks other evidence that petitioner was made aware of a mechanism to repay his defense costs or reimburse the state for the cost of his care while incarcerated, or that such a mechanism exists and that inmates in petitioner's position generally would be aware of it. That is, the evidence in the record does not permit the inference that, as of the time of the hearing, petitioner had any reason to think that he could and should be paying the state for the costs of his defense and his incarceration. Accordingly, it is not reasonable to infer, as the board did, that petitioner "lacks a sense of personal responsibility and recognition of his indebtedness to his fellow citizens and Oregon taxpayers; he appears to believe that he is entitled to live off the labors of others" because petitioner has not reimbursed the state for the cost of his defense or the cost of his incarceration. No other evidence supports that finding; therefore, it is not supported by substantial evidence.

*Third*: the finding that petitioner "is still involved in an adventure-seeking, risk-taking lifestyle." The only

evidence on which the board relied to make that finding is the evidence that petitioner has assisted law enforcement officers while incarcerated and that petitioner intervened in a fight to help protect a corrections officer. Although that conduct undoubtedly was risky, it does not permit a reasonable inference that petitioner's lifestyle continues to be one of adventure seeking and risk taking. It is just as likely that petitioner's conduct represents an attempt to redeem himself for his past acts. And nothing else in the record about petitioner's general lifestyle while incarcerated would permit a reasonable factfinder to make the finding that the board made.

Thus, three of the factual findings underlying the board's conclusion that petitioner did not prove that he is likely to be rehabilitated within a reasonable period of time are not supported by substantial evidence in the record. The board's order does not disclose whether the board would have reached the same determination regarding petitioner's capacity for rehabilitation had it not relied on the erroneous factual findings. Under those circumstances, we must remand to the board to reconsider its decision without relying on the erroneous factual findings. *See Reguero v. Teacher Standards and Practices*, 312 Or 402, 422, 822 P2d 1171 (1991) (remanding to agency for reconsideration where some of the factual findings on which agency relied in reaching ultimate conclusion were not supported by substantial evidence under ORS 183.482(8)(c)).

Reversed and remanded.