Argued and submitted February 11, reversed and remanded October 8, 2014

In the Matter of the Compensation of
Angelica M. Spurger, Claimant.

Angelica M. SPURGER,
*Petitioner,*

*v.*

SAIF CORPORATION
and Pacific Health & Rehabilitation,
*Respondents.*

Workers' Compensation Board
1006324; A150351

337 P3d 883

Donald M. Hooton argued the cause and filed the briefs for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

## EGAN, J.

Claimant seeks judicial review of an order of the Workers' Compensation Board (the board) that denied her compensation for what she maintained was a "chronic condition impairment" of her left hip under OAR 436-035-0019. That order concluded that claimant had failed to demonstrate that she was "significantly limited in the repetitive use" of her hip such as would entitle her to compensation under that rule. Claimant contends that the board erred in failing to either identify or apply a proper interpretation of the term "significantly limited." Because we conclude that the board's order is not supported by substantial reason, we reverse and remand.

The facts are undisputed. After claimant was injured at work, SAIF, her employer's workers' compensation insurer, accepted her claim for—among other things—a left-hip strain. One of the issues raised during the process of closing her claim was whether claimant was entitled to additional compensation for a "chronic condition impairment" in her left hip. That determination is controlled by OAR 436-035-0019, which provides: "(1) A worker is entitled to a 5% chronic condition impairment value for each applicable body part, when a preponderance of medical opinion establishes that, due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use of [a list of body parts that includes the hip]."[1]

As part of the claim-closure process, Dr. Franklin Wong examined claimant. SAIF sent Wong a check-the-box letter, asking him various questions about claimant's medical condition. One of those questions asked: "Which best describes the worker's limitation in repetitive use of the left hip for the accepted condition(s)?" Underneath that question were three boxes, labeled "[n]o limitation," "[s]ome limitation," and "[s]ignificant limitation." Wong checked the "[s]ome limitation" box.

Claimant's attorney sent Wong a "concurrence letter," asking Wong to memorialize his understanding of a

---

[1] The impairment value is calculated as part of the claim-closure process; a higher impairment value results in greater compensation. *See generally* ORS 656.214.

previous conversation of theirs concerning claimant's left-hip condition. Claimant's attorney asked Wong whether he agreed with the following characterization of their discussion:

"I asked you specifically what limitation you would anticipate. You indicated that [*claimant*] *would have difficulty with repetitive squatting, walking long distances and static standing for long periods of time. You indicated that, as a physician, the term 'significant' means that there is a major loss of function as a result of limitation.* Because SAIF Corporation only gave you three choices—no limitation, some limitation or significant limitation—you selected some limitation. We discussed the fact that neither the [Workers' Compensation] Division nor the Board has provided any guidance with what the word 'significant' actually means, but that the dictionary definition of the word 'significant' merely means important, weighty, or notable. You indicated that it would be beneficial if someone would provide more guidance with how the word 'significant' was supposed to be interpreted."

(Emphasis added.) Wong indicated that the statement accurately reflected both their conversation and his "opinion to a reasonable medical probability."

Claimant's attorney also sent a letter to claimant's attending physician, Dr. Hai Tran. That letter first asked Tran whether he agreed with the "findings, opinion, and diagnosis(es)" that Wong had expressed in the concurrence letter; Tran responded that he did. It then asked, "Assuming the definition of 'significant' applies (important, weighty, or notable), would you consider [the] limitations discussed on page 2 [*i.e.*, difficulty with squatting, walking, and standing] to be significant?" Tran initially responded "yes" to that question, but then crossed out that response and wrote: "there's no clear criteria for 'significant' therefore unable to comment either way."

SAIF issued a notice of closure that did not include, in its calculation of compensability, the five-percent chronic-condition impairment value permitted by OAR 436-035-0019. Claimant sought reconsideration of that decision before the Administrative Review Unit (ARU), which functions as a part of the Department of Consumer and Business Services (the department), the agency that administers the

Workers' Compensation Division. The ARU issued an order that did not assign the impairment value on the ground that claimant had failed to prove that she was "significantly limited" in the repetitive use of her hip. The ARU order reasoned as follows:

"It is noted that Dr. Wong initially indicated that claimant had 'some' rather than 'significant' limitation in the repetitive use of the [left] hip due to the accepted hip conditions. Dr. Tran concurred with that assessment. Upon clarification to claimant's attorney, Dr. Wong agreed that claimant had some limitation in repetitive use and described some anticipated limitations. Dr. Wong also noted the dictionary definition of 'significant' and agreed that guidance as to the meaning of the meaning [sic] of 'significant' would be helpful. Dr. Wong did not clearly state claimant was significantly limited in repetitive use. In response to the request for clarification, Dr. Tran, claimant's attending physician, indicated he was unable to comment either way as to whether there were significant limitations.

"We conclude that claimant has not met the threshold (minimum) impairment established in the rule and has not proved entitlement to a value under OAR 436-035-0019. See ORS 656.266 and OAR 436-035-0007(13)."

In response to that order, claimant requested review of the chronic-condition-impairment determination before an administrative law judge (ALJ). The parties submitted the matter on the record. The ALJ upheld the order on reconsideration, reasoning, in part, as follows:

"Here, Dr. Wong opined that claimant had 'some' limitation in the repetitive use of her left hip. Dr. Wong explained that claimant would have difficulty repetitively squatting, walking long distances and static standing for long periods of time. 'Magic Words are not required to establish a "chronic condition" limitation.' See Buss v. SAIF, 182 Or App 590, 594-95[, 50 P3d 253] (2002) ('magic words' not required for 'chronic condition' rating when the record contained medical opinions from which it could be found the claimant was entitled to a 'chronic condition' award) * * *. However, without further explanation from Drs. Wong and Tran, it cannot be inferred that claimant's limitations amount to a 'significant limitation.' See Benz v. SAIF, 170 Or App 22, 25[, 11 P3d 698] (2000) (although the Board may draw reasonable inferences from the medical evidence,

it is not free to reach its own medical conclusions in the absence of such evidence); *see also SAIF v. Calder,* 157 Or App 224, 227-28[, 969 P2d 1050] (1998) (the Board is not an agency with specialized medical expertise entitled to take official notice of technical facts within its specialized knowledge); *see also, Lenore A. Barrett,* 55 Van Natta 3261, 3262 (2003) (physician's opinion that the claimant had 'difficulty with doing repetitive activity' was insufficient to establish a chronic condition).

"Moreover, even when Dr. Wong was presented with a proposed definition of 'significant,' he, nonetheless[,] did not opine that claimant's limitation in repetitive use was 'significant.' *** Thus, even if that definition were adopted, the medical evidence would still be insufficient to warrant an award for a 'chronic condition.'"

Claimant appealed that decision to the board, which, in turn, upheld the ALJ's decision and adopted its reasoning. The board also added the following supplemental reasoning:

"The pivotal question is whether an impairment rating for a chronic left hip condition is warranted. Such a rating is warranted if the medical evidence establishes that repetitive use of claimant's left hip is significantly limited. *See* OAR 436-035-0019(1)(i); *see also* OAR 436-035-0007(7) ('If there is no measurable impairment under these rules, no award of permanent partial disability is allowed.') (WCD Admin. Order 10-051).

"Claimant asserts that the activities of walking and standing are important activities of daily living and that 'restrictions' in repetitively performing these activities will have a 'significant' impact whether those activities are performed on or off the job. Thus, according to claimant, her predicted difficulties support a conclusion that she is significantly limited in the repetitive use of her left hip.

"However, Dr. Tran specifically declined to comment on whether he considered those difficulties 'significant'—even if 'significant' means 'important, weighty or notable.' Under these circumstances, even assuming application of claimant's proposed definition, Dr. Tran's opinion would not support a conclusion that claimant's physical restrictions reached the 'significantly limited in repetitive use' requirement for a 'chronic condition' rating.

"In reaching this conclusion, we do not simply rely on the fact that the physicians used the term 'some' limitation, rather than 'significant' limitation. \*\*\* Instead, in evaluating the sufficiency of relevant medical opinions we consider them as a whole and in the context in which they were rendered.

"Here (as noted), given choices as to whether claimant had no limitation, some limitation, or significant limitation in the repetitive use of her left hip, Dr. Wong checked a box choosing 'some limitation' and Dr. Tran concurred. However, the existence of a chronic condition is an 'either/ or' determination; a claimant's repetitive use is either 'significantly limited' or 'not significantly limited.'

"Under these circumstances, having considered Dr. Tran's opinion as a whole and in context, we find it insufficient to warrant a chronic condition rating. *See James W. Mcvey*, 63 Van Natta 1101, 1104 (2011) (evidence of limited ability to perform certain tasks does not necessarily support a significant limitation in repetitive use; nor does evidence of limited repetitive use, without evidence establishing that such a limitation is significant). Consequently, we agree with the ALJ's conclusion that claimant has not carried her burden of proving error in the reconsideration process."

(Footnotes and some citations omitted.)

Claimant is now before us, asserting that the board erred in applying the term "significantly limited" in OAR 436-035-0019.[2] She contends that the board failed to identify a proper, or, indeed, any interpretation of the term, and, instead, inappropriately relied entirely on the physicians' refusal to label her repetitive-use limitations "significant." She argues that no court or administrative body has provided an interpretation of the term, and points to board decisions that, she contends, demonstrate that the lack of an identifiable standard is producing inconsistent chronic-condition outcomes in cases with similar facts. She advocates

---

[2] SAIF does not argue that claimant failed to establish any of the other requirements under OAR 436-035-0019 (*e.g.*, a "chronic and permanent medical condition" that limits the "repetitive use" of, in this case, the hip). Rather, as reflected in the board's order, this dispute concerns only whether claimant established that her condition was one that "significantly" limited the repetitive use of her hip.

that this court should interpret the term "significantly" in OAR 436-035-0019 to refer to any repetitive-use limitation that is more than a *de minimis* one.

SAIF presents a three-pronged response. First, it argues that claimant did not, during the reconsideration process before the department, present the *de minimis* interpretation of "significantly limited" that she now advances on appeal, and that we, therefore, should not consider it here. Second, SAIF argues that we need not undertake to interpret OAR 436-035-0019 because, at all events, claimant's medical evidence was insufficient to meet her burden of establishing a chronic-condition impairment. Third, citing both the dictionary and the administrative history behind the enactment of the rule, SAIF asserts that—should we decide it necessary to interpret the rule—the phrase "significantly limited" in OAR 436-035-0019 refers to a limitation that is "important, weighty, or notable" and that claimant's evidence was insufficient to make the requisite showing under that standard.

Our review of the board's order is governed by ORS 183.482(7) and (8). ORS 656.298(7). ORS 183.482(8)(c) provides:

"The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

In order to meet the substantial evidence requirement,

"the board's opinion must include a sufficient explanation to allow a reviewing court to examine the agency's action; *i.e.,* it must be supported by substantial reason. An order that contains a sufficient explanation is one that clearly and precisely states what the board found to be the facts and fully explains why those facts lead it to the decision it makes. *Home Plate, Inc. v. OLCC*, 20 Or App 188, 190, 530 P2d 862 (1975). *See also Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982) ('It is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them.')."

*Wal-Mart Stores, Inc. v. Young*, 219 Or App 410, 413-14, 182 P3d 298 (2008) (some internal quotation marks, citations, and brackets omitted).

We begin by considering, and rejecting, SAIF's argument that claimant did not adequately preserve her arguments before the department. *See* ORS 656.283(6) ("[I]ssues that were not raised by a party to the reconsideration may not be raised at [an ALJ] hearing unless the issue arises out of the reconsideration order itself."); ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."); *Thomas Creek Lumber v. Board of Forestry*, 188 Or App 10, 30, 69 P3d 1238 (2003) (stating that the preservation requirements of ORAP 5.45 "apply not only to appeals of trial court judgments but also to petitions for judicial review of agency action"). It will be useful here to summarize the different interpretations of "significantly limited" that surfaced at various points during these proceedings. Wong and Tran both took "significantly limited" to mean a "major loss of function." During the process of closing the claim, claimant's attorney introduced an interpretation of the phrase as "important, weighty, or notable," by putting it to Tran whether claimant's limitations were significant under that definition. Before the ALJ and the board, claimant urged that the phrase meant any limitation that "is important and likely to have influence or effect on function." Claimant is now, before this court, urging that "significantly limited" refers to any limitation that is not insignificant, *i.e.*, one that is more than *de minimis*.

Here, the ARU—a part of the agency that promulgated OAR 436-035-0019—was squarely confronted with whether claimant had demonstrated that she suffered from a chronic-condition impairment. Without taking arguments from the parties, the ARU concluded that she had not, and based that decision on the record in which both the "major loss of function" and "important, weighty, or notable" interpretations appeared. Additionally, as the department acknowledged in the ARU order, claimant offered a sworn statement from Wong that "it would be beneficial if someone would provide more guidance with how the word 'significant' was supposed to be interpreted." Claimant subsequently sought

review before the ALJ and the board, arguing to both that the rule had never been interpreted and that, correctly understood, even "mild" limitations on repetitive use could be "significant[]," and that a loss of repetitive use "is significant if it is important and likely to have influence or effect on function." Although she has, in this petition for judicial review, modestly refined her proposed interpretation of "significantly limited," it cannot reasonably be said that either SAIF or any of the reviewing entities below would be caught off guard in the least by the argument that claimant makes here, which is, at its core, that the board denied that she was "significantly limited" without providing any explanation of what "significantly limited" means or why her evidence was insufficient as against that meaning. *See, e.g., Quick Collect, Inc. v. Higgins*, 258 Or App 234, 239, 308 P3d 1089 (2013) (preservation requirements exist to permit a lower court to avoid or correct error and to ensure fairness to the opposing party).

We turn next to SAIF's contention that it was not necessary in this case for the board to provide a conclusive interpretation of the phrase because claimant's evidence was insufficient to show that she was "significantly limited," even under the interpretation that claimant advanced below. It urges that substantial evidence supports that conclusion, and, thus, that we should reach the same conclusion here that we did in *Schleiss v. SAIF*, 250 Or App 458, 281 P3d 626 (2012), *rev'd on other grounds*, 354 Or 637, 317 P3d 244 (2013), in which we rejected a claimant's challenge to the board's application of OAR 436-035-0019 without interpreting the words "significantly limited."

We reject SAIF's argument, which is based on the premise that there was insufficient evidence in the record to establish a "significant[] limit[ation]" because no doctor had labeled claimant's repetitive-use limitations "significant." That fact, however, cannot be determinative in this case. As we explained in *Weckesser v. Jet Delivery Systems*, 132 Or App 325, 328, 888 P2d 127 (1995),

> "the administrative rule permits the Board to make an award for 'chronic condition impairment' even if the record contains no express medical finding that the condition is 'chronic,' so long as the record contains medical opinion * * * *from which it can be found* that the worker is unable to

repetitively use a body part 'due to a chronic and permanent medical condition.'"

(Emphasis in original.); *see also Buss*, 182 Or App at 595-96 (reversing and remanding for reconsideration where it was impossible to determine whether a board order concerning chronic-condition impairment erroneously relied on "magic words"). Although *Weckesser* addressed the question in the context of a doctor's failure to label a condition "chronic" under a former version of the rule, the principle applies equally here: As the board acknowledged, what is relevant in the chronic-condition is whether the *limitations* described in the medical-opinion evidence show that claimant is significantly limited, not whether a doctor *described* the limitations as "significant[]" according to the doctor's understanding of that term. Claimant advocated to both the ALJ and the board that the term "significantly limited" encompassed even "mild" limitations on repetitive use and that a loss of repetitive use "is significant if it is important and likely to have influence or effect on function." If that or a similar interpretation is correct, as claimant plausibly urges, it is difficult to see why uncontroverted evidence from two doctors that claimant would "have difficulty with repetitive squatting, walking long distances and static standing for long periods of time" was insufficient to establish that she was "significantly limited" in the repetitive use of her left hip under OAR 436-035-0019.

As noted, SAIF also points to our decision in *Schleiss* in urging us to affirm. In that case, a medical arbiter had declared that the claimant had "some limitation in his ability to use the spinal area" and that the limitation was "moderate"; the board determined that the opinion did not establish that the claimant was significantly limited in the use of his back. 250 Or App at 460. The claimant argued that the board misinterpreted "significantly limited." We held otherwise:

"We disagree with a basic premise of claimant's argument, which is that the board applied an incorrect legal standard. Claimant identifies nothing in the board's order that suggests it misinterpreted the words 'significantly limited.' Rather, claimant's argument reduces to a claim that, because the board concluded that he was not 'significantly

limited' in using his back, the board *must have* applied the wrong legal standard. We are not persuaded. The board's order reflects that the board properly avoided looking for 'magic words' (like 'significant') in the medical arbiter's report and, instead, simply determined as a *factual* matter whether the arbiter's findings, including its determination that claimant had 'some' 'moderate' limitation, established that claimant's ability to use his back was significantly limited. Substantial evidence supports that determination, which we do not disturb."

*Id.* at 463 (emphasis in original). In contrast to *Schleiss*, where the claimant merely urged that the board must have reasoned incorrectly because it reached an unfavorable result, claimant here points to what she contends is a hole in the board's reasoning, *viz.*, that it not only failed to identify a legal interpretation of the phrase "significantly limited," but also, presumably in consequence, did not explain why the evidence of her limitation in repetitive use was insufficient under that standard.

We thus turn to claimant's contention that the board failed to explain or apply a correct understanding of the term "significantly limited." Our review in that respect is governed, in part, by the principle that "[i]t is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them." *Ross*, 294 Or at 370; *see Young*, 219 Or App at 413-14 ("[T]he board's opinion must include a sufficient explanation to allow a reviewing court to examine the agency's action." (Internal quotation marks omitted.)). The board's only explicit attempt to explain why, as a legal matter, claimant had failed to show that she was "significantly limited" was wholly centered on the doctors' refusal to call claimant's limitations "significant" under either a "major loss of function" or an "important, weighty, or notable" definition of the term. For instance, the board expressed its willingness to assume that the "important, weighty, or notable" definition applied, but then stated that there was insufficient medical evidence to establish that claimant was "significantly limited" under that standard because Tran had refused to say that she was. That puts the cart before the horse. The doctors' opinions do not drive the legal

standard announced in the administrative rule; rather, the legal meaning of the administrative rule drives the significance of the doctors' opinions. *See Haskins v. Employment Dept.*, 156 Or App 285, 288, 965 P2d 422 (1998) ("Validly promulgated administrative rules have the force of law."). Although doctors' opinions are, of course, critical evidence in this context, they are of little use in a circumstance where the board has not identified a legal principle by which to gauge their evidentiary weight. If the pertinent question is whether the glass is a quarter-full, an opinion that the glass is not half-full is of little use, as is a refusal to say whether the glass is one-third full.[3]

When the doctors' *labels* of the repetitive-use limitations are stripped away from the record, all that is left, insofar as a *description* of those limitations, is the statement that claimant "would have difficulty with repetitive squatting, walking long distances and static standing for long periods of time." The board implicitly suggested that it had considered those limitations when it stated that it considered the medical opinions "as a whole and in the context in which they were rendered." However, that recital tells us, the reviewing court, nothing about *why* the board considered the described limitations not "significant[]" enough to qualify for an impairment value under OAR 436-035-0019. In other words, the board's order has facts and a conclusion but we are left to guess why the facts lead to the conclusion. The meaning of the phrase "significantly limited" is not self-evident. Claimant has advanced an interpretation that, ostensibly, appears as valid as that which SAIF urges, but the board's order does not identify which interpretation is correct, let alone explain why that interpretation is correct. Put simply, it is not possible to discern from the board's order *why* "difficulty" with repetitive squatting, walking long distances, or static standing for long periods is insufficiently "significant[]" under the rule. We agree with claimant that the board has failed to provide an adequate explanation of

---

[3] Moreover we would reject any suggestion—had one been made—that the board implicitly adopted either the "major loss of function" or "important weighty or notable" interpretation of "significantly limited." Even if it were possible to deduce, as a matter of logic, that the board intended to do so, we will not infer such an intention where the board could have easily stated its understanding one way or another.

what it considers "significantly limited" to mean and, thus, conclude that the board's order is not supported by substantial reason.[4]

We nonetheless decline claimant's request that we provide a judicial interpretation of the term "significantly limited." The interpretation of an administrative rule is, in the first instance, the province of the agency that promulgated it. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 233-34, 621 P2d 547 (1980) ("[T]he function of the court is to review an interpretation if review is sought, rather than to formulate it in the first instance[.]"). Although the board did not promulgate OAR 436-035-0019, we conclude that the board's order is insufficient to permit us to adequately conduct the review function that has been assigned to us by statute; we remand to the board in order to correct that deficiency. *See Kenimer v. SAIF*, 183 Or App 131, 137, 51 P3d 632 (2002) ("We cannot review for substantial evidence if we cannot discern an agency's rationale."); *accord Buss*, 182 Or App at 596 (reversing and remanding for lack of substantial reason in a chronic-condition-impairment case where it was impossible to determine if the board's order rested on a legally incorrect premise).

Reversed and remanded.

---

[4] Moreover, we agree with claimant that the board's order in the present case does not, at first blush, appear to be easily reconciled with certain of its related orders. For instance, in *Dennis L. Gering*, 62 Van Natta 2572 (2010), the evidence that the board chose to accept was a doctor's finding that a condition in the claimant's knee had left him with "an altered gait, a squat limited by left knee pain, and pain when walking." The board concluded that the claimant was "significantly limited." In *Dennis J. Dickens*, 62 Van Natta 2594 (2010), the doctor's evidence on which the board relied showed that, following an injury to his spine, the claimant could "lift/carry" 40 pounds occasionally and 25 pounds frequently, and that claimant "was limited from stooping, crouching, crawling, pushing, and pulling." *Id.* at 2956. The doctor also noted that the claimant could sit, stand, or walk for "approximately one consecutive hour." *Id.* The board concluded that the claimant was significantly limited. The board's order in this case does not identify any governing principle that distinguishes the result in those cases from the result here.