Argued and submitted June 26, 2018, reversed and remanded October 16, 2019

In the Matter of the Compensation of
Brit L. Broeke, Claimant.

Brit L. BROEKE,
*Petitioner,*

*v.*

SAIF CORPORATION
and Chipman Corporation -
Chipman Moving & Storage,
*Respondents.*

Workers' Compensation Board
1601590; A164499

453 P3d 597

Claimant appeals a final order of the Workers' Compensation Board (WCB) denying claimant's occupational disease claims for plantar fasciitis in each of his feet. Claimant assigns error to WCB's determination that claimant is not entitled to an award for "15% of the leg" under OAR 436-035-0230 or to a five percent "chronic condition" award under OAR 436-035-0019. Claimant also requests penalties and fees because respondent SAIF Corporation provided claimant's treating physician with a misleading form when seeking information about claimant's limitations. *Held*: WCB's conclusion as to the "15% of the leg" award was supported by substantial evidence and substantial reason, and therefore affirmed. The Court of Appeals reversed and remanded as to the "chronic condition" award and the penalties and fees claim because the WCB's order failed to explain why claimant's significant difficulties using his feet to stand and walk do not rise to the level of a significant limitation under OAR 436-035-0019, as the Workers' Compensation Division has interpreted that rule.

Reversed and remanded.

James S. Coon argued the cause for petitioner. Also on the briefs was Thomas, Coon, Newton & Frost.

Allison Lesh argued the cause and filed the brief for respondents.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

Claimant's long-term employment in a warehouse caused him to suffer from plantar fasciitis in each foot. That resulted in a compensable occupational disease claim under the Workers' Compensation Law, ORS chapter 656. In this proceeding for judicial review of a final order of the Workers' Compensation Board,[1] at issue is the extent of claimant's permanent disability from the plantar fasciitis. The primary questions before us on that point are (1) whether the board erred in determining that claimant is not entitled to an award for "15% of the leg" under OAR 436-035-0230 and (2) whether the board erred in determining that claimant is not entitled to a five percent "chronic condition" award under OAR 436-035-0019. Also at issue is whether claimant is entitled to penalties and fees because, in claimant's view, respondent SAIF Corporation provided claimant's treating physician with a misleading form when seeking information about claimant's limitations. We uphold the board's 15 percent-of-the-leg determination, and reverse and remand its chronic-condition determination. As to penalties and fees, we conclude that SAIF's form was misleading but leave it to the board in the first instance to determine whether penalties and fees are authorized and warranted under the circumstances.

## I.  BACKGROUND

Although there are factual disputes relating to claimant's 15 percent-of-the-leg chronic-condition claims, the facts giving context to the issues before us are not disputed. We draw them from the board's order, supplementing with additional undisputed facts drawn from the evidence in the record. *Robin v. Teacher Standards and Practices Comm.*, 291 Or App 379, 381, 421 P3d 385, *rev den*, 363 Or 677 (2018).

As noted, claimant suffers from work-related disabling plantar fasciitis in both feet and has a compensable occupational disease claim for the accepted conditions of

---

[1] The board adopted in full an order by an administrative law judge (ALJ). In view of that, we refer to the ALJ's order as the board's order.

right plantar fasciitis and left plantar fasciitis. SAIF is the insurer on that claim.

In December 2015, SAIF issued a Notice of Closure on the claim. Based on the opinion of claimant's treating physician, Dr. Walters, SAIF determined that claimant's plantar fasciitis became medically stationary as of October 21, 2015. The Notice of Closure awarded four percent whole person impairment for loss of range of motion to several toes on the left foot and work disability of $16,056.54.

Claimant requested reconsideration by the Appellate Review Unit (ARU) of the Workers' Compensation Division, as allowed by ORS 656.268. In its Order on Reconsideration, the ARU affirmed the four percent whole person impairment award but awarded an additional $2,676.09 in work disability. The ARU did not award a 15 percent-of-the-leg impairment value under OAR 436-035-0230(14), which provides for that impairment value "[w]hen the worker cannot be on his or her feet for more than two hours in an 8-hour period." The ARU also did not award a chronic condition impairment value under OAR 436-035-0019(1)(a), which provides that "[a] worker is entitled to a 5% chronic condition impairment value for [the lower leg], when a preponderance of medical opinion establishes that, due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use of [the lower leg]."

Claimant requested a hearing. At the hearing, he contended that he was entitled to a 15 percent-of-the-leg impairment value under OAR 436-035-0230(14), as well as a five percent chronic condition impairment value under OAR 436-035-0019(1)(a), and that the ARU erred in concluding otherwise. He argued further that the ALJ should assess a penalty and fee under either ORS 656.268(5)(f) or ORS 656.382(1) if he concluded that claimant was entitled to a chronic condition impairment value. Claimant also argued that a penalty and fee were warranted because SAIF had solicited information from Walters using a questionnaire that was unreasonable in its format.

The ALJ disagreed. Addressing the 15 percent-of-the-leg impairment value, the ALJ found that the evidence was not persuasive that claimant could not be on his feet

for more than two hours in an eight-hour period. The ALJ discounted statements that Walters had made substantially before claimant became medically stationary, reasoning that those statements did not speak to claimant's permanent disability. As to Walters's statements on or near the time of claim closure, the ALJ determined that those statements were equivocal. He explained:

> "On October 21, 2015, Dr. Walters declared claimant's condition medically stationary and stated that he would limit claimant to 'standing walking 25% of the time and [off his] feet 75% of the time.'
>
> "Yet on November 18[,] 2015, Dr. Walters then indicated that claimant *was* able to be on his feet for *more than* two hours in an eight-hour period with respect to each foot/ ankle.
>
> "At best then, I find Dr. Walters's comments on the asserted 'walk/stand' limit to be internally inconsistent and equivocal. Even if Dr. Walters's October 21, 2015 limitation were interpreted to limit claimant to standing or walking 25 percent of the time (2 hours in an 8-hour work day), as opposed to *more than* two hours in an eight-hour period, as specified by the rule, his later statement contradicted that limitation.
>
> "Therefore, I find no error in the ARU's declining to award a value for 'walk/stand limits.'"

(Emphases in original; citations omitted.)

Addressing the chronic condition impairment value, the ALJ found that claimant had not demonstrated that he had "significant limitation" in the repetitive use of his feet/ ankles. The ALJ pointed to the fact that SAIF had given Walters a check-the-box questionnaire that asked him to specify whether claimant had "no limitation," "some limitation," or "significant limitation (more than 2/3 of the time)," in repetitive use of each foot/ankle. On that form, Walters had marked "some limitation" with respect to each foot and ankle. The ALJ further determined that the additional evidence in the record was too equivocal to demonstrate that claimant was significantly limited in the repetitive use of his feet and ankles. He noted that Walters had explained that the limitations on claimant's ability to repetitively use

his feet and ankles depended on that activity in which claimant was engaged. Accordingly, the ALJ found "no error in the Order on Reconsideration's declining to award a 'chronic condition' value."

Finally, addressing the penalty and fee issues, the ALJ explained that his rejection of claimant's chronic condition claim meant that claimant was not entitled to a penalty and fee based on SAIF's omission of a chronic condition impairment value. The ALJ also rejected claimant's contention that the allegedly unreasonable nature of SAIF's questionnaire was something that warranted a penalty and fee.

Claimant appealed to the board. The board adopted the ALJ's order in its entirety. Claimant petitioned for judicial review under ORS 656.298.

On review, claimant contends that (1) the board's determination that claimant had not demonstrated that he could not stand more than two hours in an eight-hour period is not supported by substantial evidence or substantial reason; (2) the board's determination that claimant does not have a significant limitation on the repetitive use of his feet/ankles is based on an erroneous understanding of OAR 436-035-0019(1)(a) and not supported by substantial evidence and substantial reason; (3) claimant is entitled to a penalty and fee in the event that we reverse the board's chronic condition determination; and (4) claimant is entitled to a penalty and fee because SAIF's questionnaire was misleading in how it defined what a significant limitation was for the purpose of OAR 436-035-0019. SAIF responds that the board's order is correct in all respects.

## II.   ANALYSIS

We address claimant's contentions in turn, reviewing under the standards set forth in ORS 183.482(8). ORS 656.298.

### A.   *15 Percent of the Leg*

OAR 436-035-0230(14) authorizes an impairment award to a worker who is restricted in standing and walking. It provides that, "[w]hen the worker cannot be on his or her feet for more than two hours in an 8-hour period,

the award is 15% of the leg." Pointing to the evidence that Walters opined at the time of closing that claimant should be on his feet at work only 25 percent of the time and off his feet the remaining 75 percent of the time, claimant contends that either the board must have based its decision on an erroneous interpretation of the rule or, alternatively, that the board's determination is not supported by substantial evidence. That is because it is clear, in claimant's view, that claimant can be on his feet for at most two hours in an eight-hour period and "cannot be on his * * * feet for *more than* two hours in an 8-hour period," as OAR 436-035-0230(14) provides. (Emphasis added.) In urging us to conclude that the board applied an erroneous legal standard, claimant points to the fact that, in its Order on Reconsideration, the ARU explained that claimant was not entitled to an impairment value under the rule because claimant could be on his feet for exactly two hours but not more than two hours.

We agree with claimant that the ARU's explanation reflects a misunderstanding of the rule, which, by its plain terms, provides for a 15 percent-of-the leg impairment value for anyone who "cannot be on his or her feet for *more than* two hours in an 8-hour period," a set of people that necessarily includes those who can be on their feet for exactly two hours in an eight-hour period, but not more than that. (Emphasis added.) We disagree, however, that the board's decision reflects the same mistake. Although some of the board's explanation is not entirely clear, we understand the board's rejection of claimant's 15 percent-of-the-leg impairment claim to rest on evidence that Walters opined at the time that claimant's condition became medically stationary that claimant could be on his feet for more than two hours in an eight-hour period. Walters opined that claimant could be on his feet 20 minutes per hour, which equates to 160 minutes (two hours, 40 minutes) in an eight-hour period. Walters also opined directly that claimant was able to be on his feet for more than two hours in an eight-hour period with respect to each foot/ankle. In view of that evidence, the board's determination that claimant was not entitled to the 15 percent-of-the-leg impairment is supported by substantial evidence in the record as a whole. *See Garcia v. Boise Cascade Corp.*, 309 Or 292, 294, 787 P2d 884 (1990)

("Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding.").

Claimant also contends that the board's rejection of an impairment value under OAR 436-035-0230(14) is not supported by substantial reason. "An agency's decision is supported by substantial reason if the decision 'suppl[ies] an explanation connecting the facts of the case and the result reached.'" *Akins v. SAIF Corp.*, 286 Or App 70, 76, 398 P3d 463, *rev den*, 362 Or 94 (2017) (quoting *Rogue Advocates v. Jackson County*, 282 Or App 381, 389, 385 P3d 1262 (2016)). The board's decision meets that standard here, as it explains that Walters's statements regarding claimant's ability to be on his feet for more than two hours in an eight-hour period are the reason why the board was not convinced that claimant cannot be on his feet for more than two hours in an eight-hour period.

B.   *Chronic Condition*

We start with an overview of the law, because chronic condition impairment values have been the subject of several recent decisions of this court that are pertinent to our resolution of claimant's assignment of error.

OAR 436-035-0019 governs chronic condition impairment values for different body parts. OAR 436-035-0019(1)(a) addresses the lower leg, providing that "[a] worker is entitled to a 5% chronic condition impairment value for [the lower leg], when a preponderance of medical opinion establishes that, due to a chronic and permanent medical condition, the worker is significantly limited in the repetitive use of [the lower leg]."

In *Spurger v. SAIF Corp.*, 266 Or App 183, 337 P3d 883 (2014) (*Spurger I*), we concluded that the order on review, which involved chronic condition impairment value under OAR 436-035-0019, was not supported by substantial reason because the agency had failed to supply an adequate explanation of what the term "significantly limited" means in OAR 436-035-0019. 266 Or App at 194-95. We rejected the claimant's request to supply a judicial interpretation of

the term, reasoning that doing so "is, in the first instance, the province of the agency that promulgated it." *Id.* at 195.

Following our decision in *Spurger I*, the director of the Workers' Compensation Division (WCD), the agency that promulgated the rule, issued an Industry Notice that explained the agency's interpretation of OAR 436-035-0019. In the notice, the director explained:

> "This notice explains how WCD will determine 'whether the limitations described in the medical-opinion evidence show that the worker is significantly limited' under OAR 436-036-0019(1). 'Significantly limited' is defined by neither rule nor statute. Absent statutory and administrative definition, we look to a term's plain meaning. 'Significant' is defined, most relevantly, as 'having or expressing a meaning'; 'meaningful' or 'important; notable; valuable.' *See* The American Heritage Dictionary, New College Edition; *see also*, Webster's II New College Dictionary. 'Limited' is defined as 'confined or restricted.' *Id.*

> "In applying those definitions to OAR 436-035-0019(1), it is necessary to establish when a confinement or restriction to the 'repetitive use' of a body part is important, meaningful, or notable. In the context of work restrictions, a repetitive use limitation is generally compensable when the worker is limited to 'frequent' repetitive use or action. Although OAR 436-035-0019(1) provides an award for impairment, WCD finds it reasonable to adopt an equivalent standard for the limited purpose of defining when a confinement or restriction is important, meaningful, or notable. Accordingly, WCD will interpret confined or restricted ('limited') 'repetitive use' under OAR 436-035-0019(1) as important, meaningful, or notable ('significant') when the worker is limited to frequent use of the body part. Consistent with the use of this term in the context of work restrictions, frequent means the ability to use the body part for up to two-thirds of a period of time."

Industry Notice, Workers' Compensation Division (Dec 22, 2014).

Thus, as interpreted by WCD, OAR 436-035-0019 authorizes a chronic condition impairment value for a worker who can repetitively use the body part at issue for at most two-thirds of a period of time. Said another way,

under WCD's interpretation, a worker who is restricted from repetitive use of a body part for one-third or more of a period of time is entitled to a chronic condition impairment value. WCD's interpretation of the rule is a plausible one, given the rule's text and context, and, for that reason, is entitled to deference. *See SAIF Corp. v. Eller*, 189 Or App 113, 119, 74 P3d 1093 (2003) (WCD interpretation of WCD administrative rule is entitled to deference if plausible, given the rule's text, context, and other relevant sources of law).

With that background in mind, we turn to claimant's contentions regarding the board's failure to award a chronic condition impairment value. Claimant contends that the board's decision is not supported by substantial evidence because, in claimant's view, it was unreasonable for the board to place any weight on the fact that Walters did not mark "significant limitation" on SAIF's questionnaire. In claimant's view, SAIF's questionnaire was misleading as to the meaning of "significant limitation" because it said "significant limitation (more than 2/3 of the time)." That phrasing, claimant argues, suggests erroneously that a worker's *limitation* on repetitive use must extend to more than two-thirds of the time, contrary to WCD's interpretation of the rule, which provides for a chronic condition impairment award for a worker who *can use* the body part repetitively for up to, but no more than, two-thirds of the time.

Claimant also argues that the board's determination is not supported by substantial reason, because it is undisputed that claimant cannot use his feet for standing and walking most of the time—as noted in the discussion of the "15%-of-the-leg" impairment value, Walters's most generous assessment of claimant's ability to use his feet for standing and walking allowed for him to be on his feet at most one-third of the time. In support of his substantial reason argument, claimant relies on our decision in *Spurger v. SAIF Corp.*, 292 Or App 227, 423 P3d 121 (2018) (*Spurger II*). In *Spurger II*, we remanded to the board on the ground that its order still was not supported by substantial reason, as we had concluded in *Spurger I*. 292 Or App at 231. We noted that the medical evidence established that the claimant had difficulty performing "repetitive squatting, walking long

distances, and static standing," but the board's order failed to explain why those limitations did not constitute a significant limitation. *Id*. at 228, 231.

We agree with claimant's substantial reason argument. The board's order in this case suffers from the same deficiency as did the order in *Spurger II*. It is undisputed that claimant has great difficulties using his feet to stand and walk. Yet, the board's order does not explain why those difficulties fail to rise to the level of a significant limitation under OAR 436-035-0019, as WCD has interpreted it. We must therefore reverse and remand to the board for reconsideration, as we did in *Spurger II. Id*. at 231. On reconsideration, the board should take into account the fact that the questionnaire that SAIF provided to Walters appears to use the term "significant limitation" in a manner that conflicts with WCD's interpretation of OAR 436-035-0019, creating the risk that Walters did not understand "significant limitation" to have the meaning that WCD has given to it.

C.  *Penalties and Fees*

Claimant contends that he was erroneously denied a chronic condition impairment value and should be awarded a penalty and fees for that reason. Claimant also contends that SAIF's questionnaire warrants an award of a penalty and fees, although, in his opening brief to us, claimant did not cite any statutory source of authority for such an award. In view of the fact that we are reversing and remanding for reconsideration of the chronic condition issue, we leave it to the board to assess claimant's claims for penalties and fees in the first instance, following reconsideration.

Reversed and remanded.